**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| A.D. TRADE BELGIUM S.P.R.L.,<br>Plaintiff/Judgment Creditor,<br>v.<br>REPUBLIC OF GUINEA,<br>Defendant/Judgment Debtor. | C.A. No. 23-mc-358-CFC-LDH |

**ORDER**

Pending before the Court are (1) Plaintiff and Judgment Creditor A.D. Trade Belgium S.P.R.L.'s ("A.D. Trade") motion to compel third-party garnishee Compagnie des Bauxites de Guinée ("CBG") to produce documents requested in a document subpoena served on CBG on November 27, 2023 (D.I. 40, the "Motion to Compel") and (2) CBG's motion to quash A.D. Trade's writ of attachment *fieri facias*, dated September 15, 2023, directed to CBG. (D.I. 19, the "Motion to Quash").[1] For the following reasons I will grant A.D. Trade's Motion to Compel and deny CBG's Motion to Quash without prejudice to renew.

1. A.D. Trade obtained a foreign judgment against Defendant Republic of Guinea (the "Republic") for $59.7 million and registered it with this Court on July 31, 2023. (D.I. 1).

2. A.D. Trade then moved to obtain a writ of attachment *fieri facias* (the "Writ") directed at CBG, a Delaware corporation, for attachment and execution CBG's shares owned by Republic "as well as on any other assets or rights [the Republic] may have incident to its ownership of those shares, any other debts owed by CBG to [the Republic], and any other assets owned by [the Republic] in the possession of CBG." (D.I. 2). The Court issued the Writ

[1] This case was referred to me "for all purposes including all disputes relating to discovery and the protective order and the pending motion to quash at D.I. 19" on July 8, 2024.

FILED
SEP 12 2025
U.S. DISTRICT COURT DISTRICT OF DELAWARE

"against CBG in aid of A.D. Trade's execution of an underlying judgment against the defendant/judgment debtor." (D.I. 7).

3. On November 17, 2023, CBG answered the Writ. (D.I. 12). With respect to CBG's shares, CBG maintained that the Republic "owns 49,000 shares of CBG stock, representing 49% of the total 100,000 outstanding shares of CBG stock" and that those shares are not in CBG's possession, custody, or control. (*Id.* ¶¶ 3-4). CBG explained that "[t]he Republic's shares do not carry any rights to dividends or any other economic rights" such that "no monies are currently owed by CBG to the Republic" in respect of those shares. (*Id.* ¶ 5). With respect to debt CBG may own to the Republic, CBG explained that, pursuant to a 1963 agreement between the Republic and CBG (the "Basic Agreement"), CBG pays taxes to the Republic on industrial and commercial profit and a special tax on mining products as well monthly customs and duty payments. (*Id.* ¶ 6). In addition, CBG explained that it owes other sums to the Republic in the form of miscellaneous monthly payments, withholdings, and deductions. (*Id.* ¶ 7). CBG concluded by disputing that its shares or debts are subject to attachment and execution as contemplated by the Writ, maintaining that such attachment would violate the Foreign Sovereign Immunities Act ("FSIA") and subject CBG to double liability. (*Id.*)[2]

[2] CBG stated that it "does not concede that any of its shares owned by the Republic or any other payments owed by CBG to the Republic are subject to attachment and execution" and "preserves any and all such objections, including without limitation that the Republic's shares and other amounts owing to the Republic can be seized or attached under Delaware law or the [Foreign Sovereign Immunities Act, 28 U.S.C. § 1609] FSIA, and that A.D. Trade has satisfied the requirements for obtaining the Writ in the first place." (D.I. 12 ¶ 12). Specifically, CBG maintained "the taxes and other amounts owed by CBG to the Republic raise immunity considerations under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1609 and the garnishment thereof "would raise concerns for CBG and potentially subject it to double liability if and when the Republic asserts that those taxes and other amounts are payable under the (Guinean law-governed) Basic Agreement irrespective of this proceeding." (*Id.* ¶ 8).

4. On November 27, 2023, A.D. Trade filed exceptions to CBG's answer. (D.I. 14). A.D. Trade argued that "CBG admits that it owes debts to [the Republic], and Delaware law permits attachment of 'debts owed the judgment debtors by the garnishee.'" (D.I. 14 ¶ 6, quoting *LNC Invests., Inc. v. Democratic Republic of Congo*, 69 F. Supp. 2d 607, 611 (D. Del. 1999) (citing 10 Del. C. §§ 3508, 5031)). Addressing whether CBG's shares are subject to the execution, A.D. Trade averred that "under Delaware law, the legal situs of the shares is with CBG in Delaware and therefore the shares are subject to A.D. Trade's writ of attachment fieri facias." (*Id.*, citing 8 Del. C. § 169). Addressing whether CBG's debts to the Republic are subject to execution consistent with the FSIA, A.D. Trade contends that "if the debts owed to [the Republic] are 'used for a commercial activity in the United States,' they are not immune from attachment or execution to enforce a 'judgment [] based on an order confirming an arbitral award,' such as the Judgment here." (*Id.*, quoting 28 U.S.C. § 1610(a)(6)).

5. On November 27, 2023, A.D. Trade served a document subpoena on CBG "[t]o develop evidence sufficient for the Court to resolve the issues of whether the CBG shares owned by [the Republic] and the debts owed by CBG to Guinea are amenable to execution." (*Id.* ¶ 8; D.I. 14-1, Ex. A). CBG served objections and responses and produced some documents (D.I. 18; D.I. 34-1; D.I. 35-1). As the parties met and conferred on the scope of A.D. Trade's subpoena, A.D. Trade explained that it also sought documents related to a public report describing debt swap arrangements among CBG, the Republic and ANAIM, the Republic's state mining infrastructure agency. (D.I. 35-1, Ed. A, (the "Report"); D.I. 35-1, Ex. B at 3-4 (describing documents sought relating to payments identified in the Report, hereinafter the "ANAIM Documents"); D.I. 41 at 5-6). CBG declined to produce the ANAIM Documents on grounds that identified payments "were not made to the Republic of Guinea but rather to a

separate agency. As we have explained before, our client's sworn answer and document production reflect the totality of the Republic's assets in CBG's possession, which comprise (1) the Republic's certified shares in CBG and (2) tax payments owed by CBG to the Republic." (D.I. 35-1 at 1).

6. On the same day it declined to produce further documents, June 18, 2024, CBG filed the instant Motion to Quash. (D.I. 19), arguing that neither the Republic's shares nor CBG's tax payments are attachable. (D.I. 20). Specifically, CBG maintains that the Republic's shares are not attachable under Delaware law because they are in certificated form and are not in CBG's custody, possession, or control. (*Id.* at 11). CBG also maintains that tax payments to the Republic are not attachable because (1) they are immune under the FSIA, and (2) their attachment would impermissibly subject CBG to double liability. (*Id.* at 13). CBG supported its motion with a declaration of Karifa Condé, its Legal Director and Company Secretary. (D.I. 20-1).

7. According to A.D. Trade, CBG's Motion to Quash placed a "substantial amount of evidence" before the Court. (D.I. 34-1 at 2). A.D. Trade thus sought what it characterized as "previously requested discovery and an opportunity to examine the previously unidentified witness that CBG has now put forward." (*Id.*) By way of e-mail, A.D. Trade requested a deposition of Mr. Condé and certain additional documents, including the ANAIM Documents. (*Id.* at 2; D.I. 31-1 at Ex. C, "Documents and communications concerning payments that CBG makes (other than the payments stated in CBG's Answer and Motion) to the Republic Guinea or any of its state agencies or instrumentalities, . . . information relating to the payments that we identified in our May 24 email and that you have acknowledged were made to what you refer to

as a 'separate agency' of the Republic."). CBG agreed to truncated, remote deposition of Mr. Condé, but declined to produce the ANAIM Documents. (D.I. 32 at 2; D.I. 31-1 at Ex. C).

8. The parties then filed a joint motion for a teleconference to address their discovery disputes. (D.I. 32). I scheduled a teleconference and set a briefing schedule. (D.I. 33; D.I. 34; D.I. 35).

9. At a hearing on July 18, 2024, I found most of A.D. Trade's document requests unenforceable because A.D. Trade made them in the context of an e-mail to CBG rather than a subpoena. (D.I. 57, July 18, 2025 Hearing Transcript, hereinafter "Tr."). I did, however, find that A.D. Trade's e-mail request for "[d]ocuments and communications concerning payments that CBG makes (other than the payments stated in CBG's Answer and Motion) to the Republic Guinea" (D.I. 34-1, Ex. C at 3) was encompassed by requests 9 and 13 in A.D. Trade's subpoena. (D.I. 34-1, Ex. A).[3] This includes "payment by CBG to an agency or instrumentality as sort of like a back door way to the Republic." (Tr. 21:16-19; *Id.* 21-25, "It's really [ ] the payment to the Republic, but for whatever reason, e-mail agreement, formal agreement or otherwise, the payment to the Republic is actually going to the agency."; Tr. 26:23-27:4, ". . . payment by CBG that are to the Republic would essentially back door it through an agency or instrumentality, that seems very encompassed by subpoena request nine and thirteen."). I did not, at that time, require CBG to produce documents related to payments from CBG to the Republic's alleged agencies or instrumentalities. (Tr. 27:9-18, "But, as I read the subpoena and I read request nine and thirteen of the subpoena, it says Republic and not Republic and agencies and instrumentalities, and I am

[3] Document request 9 seeks: "Any agreements, other than the Basic Agreement, pursuant to which You owe money, make payments, or otherwise transfer value to the Republic of Guinea." (D.I. 14-1, Ex. A). Document request 13 seeks, "All Documents Concerning the amounts owed by CBG to the Republic of Guinea described in Paragraphs 6 to 8 of the Answer." (*Id.*)

not prepared to find today that Republic must legally mean [*sic*] CBG [ANAIM] is an instrumentality, especially where there is a presumption of a separate legal status understanding, of course, that that presumption may be rebuttable at some later time.").[4]

10. As the parties proceeded under my ruling, CBG told A.D. Trade that it conducted a search and had no other documents to produce: "At the July 18 hearing, the Court told us to produce any documents showing whether 'there is a payment by CBG to an agency or instrumentality as sort of like a back door way to the Republic' in response to Subpoena Requests No. 9 and 13. After looking into this for several weeks, we have confirmed that CBG has no such arrangements. The ANAIM arrangement described in the [Report] you sent us was the only such arrangement, and with respect to that arrangement, CBG made the last payment that had any value to the Republic back in 2018." (D.I. 42-2 at 3). CBG further explained:

> As a show of good faith, we provide a brief explanation of the ANAIM arrangement based on our investigation. That arrangement comprised two parts: one, a debt swap in 2016 whereby CBG assumed the Republic's debt to ANAIM in the amount of approximately $11.4 million in exchange for forgiveness of CBG's equivalent corporate tax liability owing at that time; and two, an agreement that CBG would take on and repay the rest of the Republic's debt to ANAIM (of approximately $ 13.6 million) in exchange for corresponding tax deductions from the Republic. In 2017 and 2018, CBG repaid the $13.6 million amount and received corresponding tax deductions from the Republic, such that the $13.6 million debt was fully settled by May 2018. The remaining $11.4 million, which is owed exclusively by CBG to ANAIM, has an outstanding balance of about $1.3 million (CBG repaid approximately $10.1 million to ANAIM between 2019 and 2022,

---

4 *See also* Tr. 27:5-8, 9-18 (declining to grant motion to compel with respect to second category of documents"); *Id.* at 22:8-14 (identifying second category of documents as: "Basically what I understood you to say in different words is we want to take a look at whenever CBG is making payments to agencies or instrumentalities because we might want to take a look and see whether those agencies and instrumentalities are just alter egos of the Republic absent any sort of formal or informal agreement between CBG and the Republic to pay the agency its tax payments."); D.I. 14-1, Ex. A (no definition for term "Republic of Guinea")

> with the last payment having been made in December 2022). The Republic is receiving no benefit in relation to these amounts, nor does it stand to receive any benefit with respect to the $1.3 million outstanding balance. Likewise, CBG is receiving no tax credits for these payments, and has not received any tax credits from the Republic for payments to ANAIM since December 2017.

(D.I. 42-2, Ex. C).

11. In response, A.D. Trade contended that these "arrangements could support the garnishment by A.D. Trade of taxes owed by CBG to the Republic" and thus sought to verify the details described, "including the assertions (i) that despite the outstanding balance on the $11.4 debt swap, the Republic is no longer receiving any benefits from it and that CBG no longer is receiving any tax credits for it, and (ii) that the separate $13.6 million debt to ANAIM that CBG assumed from the Republic was fully settled in 2018." (*Id.*) A.D. Trade then sought "all documentation of the two debt-related arrangements as well as any documents supporting (or undercutting) the assertion that the Republic is no longer benefiting from them and that CBG no longer is entitled to any tax credit for payments already made or still owed to ANAIM." (D.I. 42-2, Ex. C at 2). CBG declined, arguing that its discovery obligations were satisfied because the Writ "is limited to the CBG shares owned by the Republic of Guinea." (*Id.*). CBG maintained that, "The Court ordered us to confirm that there are no backdoor arrangements with respect to the Republic, and we've confirmed that, too, following a diligent search" and considered A.D. Trade's requests improper because "they're outside the scope of the writ, they're outside the scope of your subpoena as the Court held, and they're outside the scope of relevance." (*Id.*)

12. A.D. Trade then filed the instant Motion to Compel, complaining that "CBG has not produced, and refuses to produce, any documents about its payments to ANAIM under the $25 million debt arrangement with the Republic, including the $1.3 million payment that CBG still owes to ANAIM under that arrangement" and argued that such requests fall into subpoena

requests No. 9 (agreements "pursuant to which You owe money, make payments, or otherwise transfer value to the Republic of Guinea"), No. 11 ("all transfers from You to (or for the benefit of) the Republic of Guinea") and No. 12 ("credits" or "offsets . . . by which [CBG] satisfied any sums [it] owed to the Republic"). (D.I. 41 at 20).

13. In response, CBG argues it need not produce these documents because, "ANAIM is outside the scope of the Writ" and "CBG has no secret 'back door' deals with Guinea through ANAIM" because the arrangements have been "publicly available for years," rendering CBG's contrary assertions speculative (D.I. 48 at 19).

14. I agree with A.D. Trade. It is premature to conclude whether ANAIM is outside the scope of the Writ. As CBG acknowledges, legal theories exist that could permit A.D. Trade to attach the assets of a state instrumentality in this action. (D.I. 48 at 16). For example, A.D. Trade may be able to rebut the presumption that the Republic and ANAIM have independent status. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018), *aff'd on other grounds*, 932 F.3d 126 (3d Cir. 2019) (explaining how presumption is rebutted). A.D. Trade may also be able to satisfy the commercial use test to render CBG's payments to ANAIM attachable consistent with FSIA. *See Crystallex*, 932 F.3d at 150 (citing *Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 369 (5th Cir. 2004)) (applying a "totality-of-the-circumstances inquiry" to determine whether a party satisfied the commercial use exception). Whether CBG's payments to ANAIM are in fact attachable is a separate question from whether A.D. Trade is permitted to obtain discovery into those payments. Rendering a final determination over attachability now—before CBG is permitted to take discovery on facts bearing on such attachability—is premature. Therefore, I will deny CBG's Motion to Quash without prejudice to renew after such discovery is completed.

15. With respect to A.D. Trade's Motion to Compel, I agree with A.D. Trade that, "[t]he limited information that CBG disclosed to A.D. Trade in its August 13, 2024 email shows that the debt swap arrangement between CBG, the Republic and ANAIM constitutes the type of transfer of value to the Republic that falls within the scope of A.D. Trade's November 2023 subpoena, specifically Request Nos. 9, 11 and 12." (D.I. 52 at 3). The information sought is consistent with my July 18 ruling concluding that A.D. Trade's subpoena encompassed documents "wherever there is a payment to an agency or instrumentality as sort of like a back door way to the Republic," meaning there was a "payment [from CBG] to the Republic, but for whatever reason, e-mail agreement, formal agreement or otherwise, the payment to the Republic is actually going to the agency." (Tr. 21:12-25, 26:17-27:18). I cannot agree, at CBG's urging, that these documents constitute an "onerous fishing expedition." (D.I. 48 at 20). Therefore, I will grant A.D. Trade's Motion to Compel with respect to the ANAIM Documents it seeks. Specifically, CBG shall produce "all documentation of the two debt-related arrangements [CBG disclosed] as well as any documents supporting (or undercutting) the assertion that the Republic is no longer benefiting from them and that CBG no longer is entitled to any tax credit for payments already made or still owed to ANAIM." (D.I. 42-2 at 2). The timing and logistics of such production shall be worked out between the parties.

16. I do not take any position on A.D. Trade's new subpoenas which I understand to be outside the scope of the Motion to Compel. (D.I. 40; D.I. 42-3; D.I. 42-4). Even if they were within the scope, they were not submitted to the Court consistent with District of Delaware Local Rule 37.1. (D.I. 55). To the extent further discovery disputes remain, the parties shall file a Joint Motion for Teleconference consistent with my form order and the Local Rules.

Dated: September 12, 2025

Laura D. Hatcher
United States Magistrate Judge